2020 IL App (1st) 190482-U

FIFTH DIVISION
Order filed: June 19, 2020

No. 1-19-0482

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 05 CR 0235701 |
| | ) | |
| | ) | |
| DUVAL BOYKIN, | ) | Honorable |
| | ) | Timothy J. Joyce, |
| Respondent-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Having failed to file a post-trial motion, the respondent forfeited his claim of error. Forfeiture aside, we find no error in the trial court's refusal to give the respondent's proffered non-IPI verdict form.

¶ 2    The respondent, Duval Boykin, appeals from the judgment of the circuit court of Cook County entered on a jury's determination that he is still a sexually dangerous person and

remanding him to the custody of the Director of the Illinois Department of Corrections as guardian. For the reasons that follow, we affirm.

¶ 3　　After the respondent was charged by indictment with sexual assault, the State filed a petition pursuant to the Sexually Dangerous Person Act (SDPA) (725 ILCS 205/0.01 *et seq.* (West 2010)), seeking to have the respondent declared a sexually dangerous person. Following a bench trial, the circuit court entered an order on July 6, 2011, finding the respondent to be a sexually dangerous person and, pursuant to section 8 of the SDPA (725 ILCS 205/8 (West 2010)), committed him to the custody of the Director of the Illinois Department of Correction as guardian. The respondent appealed, and this court affirmed the circuit court's finding and order of commitment. *People v. Boykin*, 2013 IL App (1st) 112998-U.

¶ 4　　On July 18, 2017, the respondent filed an Application for Discharge or Conditional Release pursuant to section 9 of the SDPA (725 ILCS 205/9 (West 2016)). The respondent requested trial by jury on his application. The following evidence was adduced at the trial.

¶ 5　　The State called Dr. Melissa Weldon-Padera, as a witness. Dr. Weldon-Padera, a licensed clinical psychologist, testified to her training and experience in evaluating sexually violent individuals. The respondent did not challenge Dr. Weldon-Padera's qualifications, and the circuit court found her to be an expert in the areas of forensic psychology and risk assessment of sex offenders.

¶ 6　　Dr. Weldon-Padera testified that she reviewed the respondent's criminal history involving sex offenses and his medical history, considered his personal background, consulted with the respondent's therapist at the Big Muddy River Correctional Center and reviewed his treatment records at that institution, met with and interviewed the respondent, and made a diagnostic conclusion as to whether the respondent is still sexually dangerous and whether he has

made sufficient treatment progress in order to function outside of an institutional environment. Dr. Weldon-Padera stated that, in evaluating the respondent, she used the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition. She testified that she diagnosed the respondent with "Other Specified Paraphilic Disorder, Sexually Aroused By Nonconsenting Females, Cannabis Use Disorder, and Antisocial Personality Disorder." According to Dr. Weldon-Padera, the respondent is sexually aroused by nonconsenting females and receives satisfaction using force, violence, threats, coercion, deceit, and manipulation. She testified that, in conducting her risk assessment of the respondent's likelihood to sexually re-offend, she used an adjusted actuarial approach, which included static factors in the Static 99R test and the significant dynamic factors in the Stable 2007 test. The Static 99R contains ten historical factors that assess sex offender risk. Scores on this test can range from 3 to 12. The respondent scored 7. Dr. Weldon-Padera explained that the respondent's score placed him in the 97.2 percentile, which means that, out of 100 sex offenders, 96 would score below him, 1.5 would score above him, and the remainder would score the same as him. The respondent's score placed him in the category of well above average, which means that he is 5.25 times more likely to re-offend as compared to other convicted sex offenders. The score range on the Stable 2007 is from 0 to 26. The respondent scored 10, which placed him in a moderate risk to re-offend. Dr. Weldon-Padera testified that, when combined, the respondent's scores placed him in the highest category to re-offend when compared to the scores of other sex offenders. Dr. Weldon-Padera ultimately opined that, to a reasonable degree of psychological certainty, it is substantially probable that the respondent would commit additional sex offenses if he were not committed or confined "[b]ecause he is still a high risk to reoffend and has [made] insufficient treatment progress." She stated that there are no conditions or restrictions that the court could impose that would keep the

public safe if the respondent were released. Dr. Weldon-Padera testified that, in her opinion, the respondent had not recovered from being a sexually dangerous person to the point where he can be released with conditions. She acknowledged that the respondent has made some progress in treatment but stated that "[h]e just needs a little more work in treatment to say that he is fully and sufficiently recovered."

¶ 7    Over the respondent's objection, the following State's exhibits were admitted into evidence: certified copies of the respondent's two convictions for aggravated sexual assault in case number 94 CR 1268401, his commitment as a sexually dangerous person in case number 05 CR 35701, and certified copies of the respondent's convictions for home invasion and residential burglary in case number 03 CR 0252601. Following the admission of the exhibits, the State rested.

¶ 8    The respondent proceeded *pro se* with standby counsel and testified in narrative form. According to the respondent, he "never, ever went out and planned to rape." He described the various events that led to his arrests for sexual assault. He contended that his 2003 arrest was the result of a drug deal gone bad, not a sex offense. As for his arrest and two convictions in 1994, he stated that this was also the result of a drug deal and denied raping either the mother or the child. According to the respondent, the things he did were not rape; they were consensual and "probably turned into, you know, some other things." He admitted that, each time he was released from prison, he had committed other offenses within weeks. The respondent testified that he participated in the therapy program at the Big Muddy River Correctional Center and got a better understanding of himself and developed empathy. He related that he had learned in therapy about his different triggers that led to sex offenses. The respondent testified that his low self-esteem formed his beliefs, so he "went out and did things" to make himself feel better and to

justify his behavior through "cognitive distortions." He stated that "[t]oday I'm in a pretend normal stage." The respondent admitted that he had violent fantasies about his cellmate as recently as January 5, 2017, and admitted that he said: "I'm going to continue to do what I do till I can't do it no more." On cross-examination, the respondent agreed that notes of his therapy state that: he became visibly angry when challenged about his sex offenses; he was argumentative with the therapist; and he had stated that he was wasting his time in therapy. According to the therapist's notes, the respondent "appeared externally motivated for release rather than recovery." The respondent admitted that he is not a mental health professional.

¶ 9 After the respondent rested, the circuit court conducted an instruction conference with the parties outside the presence of the jury. During that conference, the respondent requested that that the jury be given the non-IPI verdict form that states:

> "We, the jury, find the Respondent appears to be no longer sexually dangerous but that it is impossible to determine with certainty under the conditions of institutional care that the respondent has fully recovered. We hereby refer the Respondent to the Circuit Court for further proceedings in order to determine under what conditions the Respondent may be released which would adequately protect the public."

The State objected, arguing that its expert witness had testified that the respondent was still a sexually dangerous person and that the respondent had not introduced even the slightest evidence to the contrary. The trial judge refused to give the jury the respondent's proffered verdict form.

¶ 10 After closing arguments, the trial judge instructed the jury and it began its deliberations, following which the jury returned a unanimous verdict stating that the respondent remained a sexually dangerous person. On January 10, 2019, the trial judge entered a written order that states: "It is hereby ordered that the respondent having been found to be still a sexually

dangerous person is hereby remanded to the Director of the Illinois Department of Corrections as guardian." The respondent did not file a post-trial motion, and on February 11, 2019, he filed a notice of appeal.

¶ 11    In urging reversal and remand for a new trial, the respondent raises a single argument; namely, that the circuit court erred in refusing his proffered non-IPI verdict form. He asserts that, if the jury was presented with even slight evidence in support of his theory that he is no longer sexually dangerous but it is impossible to determine with certainty under the conditions of institutional care that he had fully recovered, he was entitled to have his proffered verdict form submitted to the jury. See *People v. Sweeney*, 114 Ill. App. 2d 81, 89 (1969).

¶ 12    The State argues that the respondent has forfeited his claimed error by failing to file a post-trial motion. On the merits, the State argues, *inter alia,* that the circuit court did not err in refusing to submit the respondent's proffered verdict form as he failed to offer even slight evidence that he was not a sexually dangerous person. We agree with the State on both arguments.

¶ 13    Section 3.01 of the SDPA provides that all proceedings under that statute are civil in nature and that the Civil Practice Law (Act) (735 ILCS 5/2-101 *et seq.* (West 2018)) and the Supreme Court Rules adopted in relation to the Act shall apply to all proceedings under the SDPA except as otherwise provided. 725 ILCS 205/3.01 (West 2018). Failure to raise an issue in a post-trial motion following judgment on a jury verdict in a civil case results in forfeiture of the issue on appeal. S. Ct. R. 306(b)(2)(iii) (eff. Feb. 1, 1994); *Limanowski v. Ashland Oil Company, Incorporated,* 275 Ill. App. 3d 115, 118 (1995). Even in criminal cases, a defendant forfeits review of any issue not raised in a post-trial motion.  *People v. Herron,* 215 Ill. 2d 167, 175 (2005); *People v. Enoch,* 122 Ill. 2d 176, 186 (1988).

¶ 14    The record reflects, and the respondent admits in his brief, that he failed to file a post-trial motion in this case. As a consequence, he has forfeited any claim of error in the circuit court's refusal to submit his proffered verdict form to the jury. Forfeiture aside, we find no merit in the respondent's argument.

¶ 15    Whether the trial court erred in refusing to give a proffered jury instruction is reviewed under an abuse of discretion standard. *People v. McDonald*, 2016 IL 118882, ¶42. A party is entitled to an instruction on his theory of the case where there is some evidence to support the giving of the instruction. *People v. Jones*, 219 Ill. 2d 1, 31 (2006). The question of whether there is sufficient evidence in the record to support the giving of an instruction is one of fact, not law, and properly within the discretion of the trial court. *People v. Cacini*, 2015 IL App (1st) 130135, ¶ 46.

¶ 16    The respondent relies on the analysis in *People v. Sweeney,* 114 Ill. App. 2d 81, 89 (1969) in support of the proposition that, if the jury was presented with even slight evidence in support of his theory that he is no longer sexually dangerous but it is impossible to determine with certainty under the conditions of institutional care that he had fully recovered, he was entitled to have his proffered verdict form submitted to the jury. We believe that the respondent's reliance upon *People v. Sweeney* is misplaced.

¶ 17    In *Sweeney,* the State introduced evidence from its psychiatric expert that the respondent was still a sexually dangerous person. *Sweeney*, 114 Ill. App. 2d at 86. However, one of the psychiatric experts testified that, in his opinion, the respondent had recovered from being a sexually dangerous person, but it was not possible to determine with certainty whether the respondent had recovered. *Id.* at 89. The *Sweeney* court concluded that this testimony was

sufficient to support the respondent's proffered instructions (*Sweeney*, 114 Ill. App. 2d at 89), which stated:

"The Court instructs the jury that there is in force in the State of Illinois a Statute which reads as follows:

'If the patient is found to have recovered, the Court shall order that he be discharged. If the Court finds that the patient appears to be no longer sexually dangerous, but that it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered, the Court shall enter an order permitting said person to go at large subject to such conditions and supervision by the Director as in the opinion of the Court will adequately protect the public.'

If you find that James R. Sweeney appears to be no longer sexually dangerous but that is [*sic*] is impossible to determine with certainty under conditions of institutional care that he has fully recovered, you will being (sic.) in a verdict to the effect." *Id.* at 88-89.

The *Sweeney* court held that "[i]f there was but slight evidence relating to a particular theory of his case – yet such evidence might permit a jury to find on it – he was entitled to an instruction then on that theory." *Id.* at 89.

¶ 18    In the instant case, Dr. Weldon-Padera testified that, to a reasonable degree of psychological certainty: it is substantially probable that the respondent would commit additional sex offenses if he were not committed or confined; he is still a high risk to reoffend; that there are no conditions or restrictions that the court could impose that would keep the public safe if the respondent were released; and the respondent has not recovered from being a sexually dangerous

person to the point where he can be released with conditions. Unlike the facts in *Sweeney,* there was no contrary psychiatric opinion in this case. Stated otherwise, there was not even the slightest competent psychiatric evidence introduced in this case that could support a finding by the jury that the respondent appears to be no longer sexually dangerous. In the absence of any such evidence, the trial court did not err in refusing to give the jury the respondent's proffered non-IPI verdict form.

¶ 19    Having determined that the trial judge did not err in refusing the respondent's proffered verdict form, it follows that we reject the respondent's plain-error argument. *McDonald,* 2016 IL 118882, ¶69.

¶ 20    Based upon the foregoing analysis, we affirm the judgment of the circuit court entered on the jury's verdict that the respondent is still a sexually dangerous person and the order remanding the respondent to the custody of the Director of the Illinois Department of Corrections as guardian.

¶ 21    Affirmed.