**2024 IL 129676**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 129676)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
MATTHEW SLOAN, Appellee.

*Opinion filed November 21, 2024.*

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Holder White, Cunningham, and
Rochford concurred in the judgment and opinion.

Justice Overstreet took no part in the decision.

**OPINION**

¶ 1        Defendant Matthew Sloan was found guilty by a jury of first degree murder for
the shooting death of his brother, David Sloan, conduct for which defendant
asserted self-defense. The Jefferson County circuit court denied his request for a
jury instruction on the duty to retreat (Illinois Pattern Jury Instructions, Criminal,

No. 24-25.09X (4th ed. 2000) (hereinafter IPI Criminal 4th), and the appellate court reversed that finding. At issue is whether the duty to retreat jury instruction was applicable under the instant facts and, if it was, whether the trial court's refusal to give it was an abuse of discretion. Based on the standard of review applicable to the trial court's ruling on a jury instruction request, we find the trial court did not abuse its discretion when it rejected the duty to retreat instruction. We reverse the judgment of the appellate court, affirm the judgment of the trial court, and remand to the appellate court for resolution of defendant's unaddressed claims of error.

¶ 2                                    BACKGROUND

¶ 3        In July 2018, defendant was charged with three counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2016)), one count of aggravated battery with a firearm (*id.* § 12-3.05(e)(1)), and one count of aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)) for shooting and killing his brother, David Sloan, and for shooting a firearm in the direction of David's wife, Sara Sloan. Prior to trial, defendant asserted the affirmative defenses of self-defense and imperfect self-defense. See *id.* §§ 7-1, 9-2(a)(2).

¶ 4        A jury trial took place. Sara testified. On July 4, 2018, she dropped her husband, David, off at the house of his cousin, Daniel Klevorn, at approximately 12 p.m. David called her at 5 p.m. and asked her to pick up defendant from Klevorn's house and take him home. When Sara arrived at Klevorn's house, David and defendant loaded David's guns into the trunk, David entered the front passenger seat, and defendant sat in the back seat. On the drive to defendant's house, defendant "was threatening and trying to argue with David." David explained to defendant they were just trying to give defendant a ride home so he would arrive safely and not drive while intoxicated. David eventually turned up the radio to drown out defendant.

¶ 5        When they arrived at the house defendant shared with his son and his parents, defendant and David both exited the vehicle and met in front of it. David said, "If you want to kick my ass, here I am." The brothers then engaged in a physical fight in the driveway. Sara quickly broke up the fight, and defendant went into the house. She and David followed him. The door was unlocked, and David entered ahead of her. They walked down the hall to defendant's bedroom, and at the doorway, she

saw defendant with a gun on his shoulder. She did not recall if David said anything, although he may have said, "What are you going to do?" Defendant then shot David. She ran from the house and called 911. On cross-examination, Sara said she knew the fight in the driveway was over after she separated the brothers because they stopped hitting each other and exchanging words. When she and David went into the house, they were not chasing defendant, although all three of them were walking faster than normal.

¶ 6        Klevorn testified. On July 4, 2018, he met defendant and David at defendant's house in the morning to drink and shoot guns. Eventually, he and defendant went to the liquor store before going to Klevorn's house. Sara drove David to his house around noon. The three men continued drinking until defendant said he wanted to go home. David called Sara for a ride home for himself and defendant. When Sara arrived, the brothers loaded the guns, which belonged to David, into the trunk.

¶ 7        Other trial evidence presented by the State established both Sara and defendant called 911 after the shooting, defendant identified himself as the shooter to the responding officers, and David was shot from a distance of 1 to 3 feet. Following the presentation of the State's evidence, defendant moved for a directed verdict, which the trial court denied.

¶ 8        Defendant testified in his defense. On July 4, 2018, he drank beer and shot guns with David and Klevorn at his parents' house where he lived. David owned the guns. Sara picked up David while he and Klevorn packed up the guns, made a liquor store run, and went to Klevorn's house. David joined them after Sara dropped him off. The three men continued drinking until approximately 4 p.m. At that time, defendant wanted to return home because he was too intoxicated to stay. David offered to have Sara drive defendant home. Sara picked up him and David. Defendant maintained that there was someone in the front passenger seat who he thought was Sara's brother and that the individual was the person he ultimately shot and killed. The unidentified man in the front seat was "talking shit," and defendant bickered with the man during the car ride. When they arrived at defendant's house, he removed his hat and sunglasses and laid them on the hood of his truck, which was parked in the driveway. He then engaged in fisticuffs with the other man. Sara broke up the fight within one minute. After the fight ended, defendant went into the house, shut the door behind him, and walked to his bedroom to lie down. It took

him approximately 15 seconds to walk from the driveway to his bedroom. Within 30 seconds, he heard the back door slam and footsteps approaching swiftly down the hallway. He reached for his shotgun and twice ordered the person to leave.

¶ 9 David continued moving toward him until he was standing at the bedroom door. He did not see Sara. David said, "What are you going to do?" Defendant raised the gun and pulled the trigger because he believed a man he did not recognize, who had access to a carload of guns, was in his house. According to defendant, "[h]e came into the house, and I defended myself." He did not know the individual in his house, thought it was Sara's brother, whom he had never met, and was concerned "he's coming back for seconds" and he would be beaten until he was "horribly injured" or "within an inch of my life." On cross-examination, defendant acknowledged he did not remember who threw the first punch in the fistfight. He described the fistfight as mutual combat with no aggressor and acknowledged he was a willing and voluntary participant in the fight. When Sara stopped the fight, David had him pinned on the ground but voluntarily released him per Sara's demand. Defendant could not recall if he was in a hurry when he went into the house. He was drunk, which affected his memory. David allowed him to go to the house and did not chase him to the door. The door was not locked, and he did not have his house keys with him. He did not lock the door to the home after entering it. In response to further inquiry, defendant stated he did not have time to lock the door. The State also asked defendant whether he considered using nonlethal force before shooting David, such as shooting him in the knee or any other place besides the head.

¶ 10 Following the close of evidence, the trial court instructed the jury, in part, regarding first degree murder (IPI Criminal 4th No. 7.01), second degree murder (IPI Criminal 4th Nos. 7.05, 7.06), and on the justification for the use of force (self-defense) (IPI Criminal 4th No. 24-25.06). Defendant requested the jury be instructed on the duty to retreat (IPI Criminal 4th No. 24-25.09X). The State objected to the instruction, arguing there was no evidence that David was the initial aggressor as required for the instruction to apply. Defense counsel responded that the instruction does not require a finding identifying the aggressor and that either IPI Criminal 4th No. 24-25.09, which he did not request, or IPI Criminal 4th No. 24-25.09X should apply. The trial court denied defendant's request for the instruction, finding there was no evidence that either defendant or David was the initial aggressor, noting that defendant "believed it was mutual combat."

¶ 11    The jury found defendant guilty of first degree murder, aggravated battery with a firearm, and personal discharge of a firearm that resulted in David's death and not guilty of the other charges. Defendant moved for a judgment notwithstanding the verdict or for a new trial, arguing in part the trial court erred by denying his request for the duty to retreat instruction (IPI Criminal 4th No. 24-25.09X). The trial court denied the motion. Sentencing ensued, and the trial court imposed an 80-year sentence: 50 years on the first degree murder conviction and a 30-year firearm enhancement, with a 3-year term of mandatory supervised release.

¶ 12    Defendant appealed, arguing in part he was denied a fair trial when the trial court denied his request for the duty to retreat jury instruction. The appellate court agreed with defendant, finding that the trial court "impermissibly resolved a factual matter that the jury should have decided" when it rejected the proffered instruction. 2023 IL App (5th) 200225-U, ¶ 71. The appellate court reversed the lower court's judgment and remanded for a new trial. *Id.* ¶ 77. It did not resolve the other issues defendant raised on appeal. *Id.* ¶ 80. This court granted the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021).

ANALYSIS

¶ 13    The issue presented in this appeal is whether the trial court abused its discretion when it denied defendant's request for the duty to retreat jury instruction. The instruction provides that a nonaggressor does not have a duty to try to "escape the danger before using force against the aggressor." IPI Criminal 4th No. 24-25.09X. The State argues that the appellate court wrongly found error in the trial court's denial of defendant's request to have the jury instructed on defendant's duty to retreat. The State maintains that the instruction was irrelevant, unsupported by the evidence, and confusing to the jury and thus properly denied by the trial court. In response, defendant argues that the appellate court properly found the trial court erred in refusing the duty to retreat instruction. According to defendant, the State's arguments improperly suggested he had a duty to avoid the danger before using force in self-defense, necessitating the instruction. Alternatively, defendant asks this court to reverse his conviction and remand for the appellate court to resolve the other issues he raised on appeal.

¶ 14 A defendant is entitled to a jury instruction where there is some evidence to support it. *People v. Everette*, 141 Ill. 2d 147, 156 (1990). Jury instructions are to be read as a whole with the goal of guiding the jury to a verdict that is based on the applicable legal principles. *People v. Parker*, 223 Ill. 2d 494, 501 (2006). Jury instructions must educate jurors with the appropriate legal principles so they can reach a conclusion based on the law that applies and the evidence that was presented. *People v. Fane*, 2021 IL 126715, ¶ 34 (citing *Parker*, 223 Ill. 2d at 500). An instruction that is not supported by the evidence or the law should not be given. *People v. Mohr*, 228 Ill. 2d 53, 65 (2008). Similarly, an instruction that could confuse the jury should not be given. *People v. Herron*, 215 Ill. 2d 167, 187-88 (2005).

¶ 15 In deciding whether to give an instruction, the court must determine whether there is some evidence to support the theory offered by the instruction but should not weigh the evidence in making its determination. *People v. Jones*, 175 Ill. 2d 126, 132 (1997) (citing *People v. Jones*, 276 Ill. App. 3d 1006, 1012 (1995) (Cook, P.J., dissenting)). In determining whether to give an instruction, the role of the court is to decide if there is some evidence that supports the defendant's theory. *Id.* We review a trial court's decision denying a jury instruction request for an abuse of discretion. *People v. McDonald*, 2016 IL 118882, ¶ 42. " 'An abuse of discretion occurs only where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it.' " *People v. Smith*, 2022 IL 127946, ¶ 25 (quoting *People v. Rivera*, 2013 IL 112467, ¶ 37). A court abuses its discretion when it gives instructions that are unclear, misleading, or "not justified by the evidence and the law." *People v. Lovejoy*, 235 Ill. 2d 97, 150 (2009).

¶ 16 The question of whether a defendant has a duty to retreat or to try to escape before acting in self-defense is explained by a pair of jury instructions. The relevancy of each instruction depends on whether the defendant initially provokes the use of force against him. IPI Criminal 4th No. 24-25.09 states:

"A person who initially provokes the use of force against himself is justified in the use of force only if

[1] the force used against him is so great that he reasonably believes he is in imminent danger of death or great bodily harm, and he has exhausted

- 6 -

every reasonable means to escape the danger other than the use of force which is likely to cause death or great bodily harm to the other person.

[or]

[2] in good faith, he withdraws from physical contact with the other person and indicates clearly to the other person that he desires to withdraw and terminate the use of force, but the other person continues or resumes the use of force."

Defendant did not request the jury be instructed based on IPI Criminal 4th No. 24-25.09, and it was not given to the jury.

¶ 17    The instruction at issue, which involves a situation where defendant has not initially provoked the use of force against himself, IPI Criminal 4th No. 24-25.09X, states: "A person who has not initially provoked the use of force against himself has no duty to attempt to escape the danger before using force against the aggressor."

¶ 18    The appellate court concluded that the trial court improperly found defendant was the initial aggressor when it denied defendant's request for the instruction, which it found was a factual determination for the jury to make. 2023 IL App (5th) 200225-U, ¶ 71. The appellate court reasoned that, by concluding there was no evidence of an initial aggressor, the trial court implicitly found that defendant's testimony that he subjectively believed he was in danger was not credible, an issue the jury should have determined. *Id.* ¶ 72. The appellate court was incorrect. The court's reliance on *People v. Stewart*, 143 Ill. App. 3d 933, 935 (1986), as support that the duty to retreat instruction "must be given 'when any evidence is offered showing the defendant's subjective belief that use of force was necessary' " is misplaced. See 2023 IL App (5th) 200225-U, ¶ 72 (quoting *Stewart*, 143 Ill. App. 3d at 935). The issue in *Stewart* was the applicability of jury instructions on defendant's theory of the case, self-defense. *Stewart*, 143 Ill. App. 3d at 935. The *Stewart* defendant asserted self-defense, but the trial court did not instruct the jury on defendant's theory. *Id.* Here, unlike in *Stewart*, the jury in this case was instructed on self-defense. The appellate court misconstrued the trial court's finding, describing that the trial court denied the instruction request because "it was unclear who the initial aggressor was." 2023 IL App (5th) 200225-U, ¶ 72. In fact,

the trial court found there was no evidence presented that either defendant or David was the initial aggressor. Thus, the duty to retreat instruction was not warranted. The facts support the trial court's determination.

¶ 19    Beginning with the fisticuffs in the driveway, Sara did not see who threw the first punch, and defendant did not remember. Defendant described the fistfight as mutual combat, and the trial court accepted that description. The appellate court determined the evidence of mutual combat was "clear." *Id.* ¶ 70. The appellate court, however, described mutual combat as "where a defendant is using force in response to the receipt of force." *Id.* The definition presented by the appellate court is imprecise. See *McDonald*, 2016 IL 118882, ¶ 59 ("Mutual combat is a fight or struggle that both parties enter willingly or where two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms and where death results from the combat." (citing *People v. Austin*, 133 Ill. 2d 118, 125 (1989)). Nevertheless, we conclude that defendant and the trial court were using the term in a colloquial and not a legal sense; that is, defendant and David agreed to engage in a fistfight.

¶ 20    As with IPI Criminal 4th No. 24-25.09X, the appellate court's definition of mutual combat requires an initial aggressor finding, which this evidence does not support. Without any facts to establish David as the initial aggressor, the appellate court could not determine that defendant acted in response to David's "receipt of force." If we consider the driveway altercation as the first incident between the brothers, there was no testimony about who threw the first punch, and David stopped fighting when Sara asked him. The confrontation inside the house, whether we characterize it as a continuation of the driveway fight or as a new incident, also does not establish David as the initial aggressor. The appellate court concluded that the evidence established that defendant retreated and David "entered the home unannounced" through a closed door before defendant shot and killed him. 2023 IL App (5th) 200225-U, ¶ 70. The court also noted David had access to the guns in the car and defendant twice ordered him to leave the house. *Id.* ¶ 71. While true, those facts do not support a conclusion that David was an initial aggressor inside the house. Sara and David did not chase defendant into the house. The door was not locked, and they did not force it open. Once in the house, David did not use any force against defendant. Both defendant and Sara testified that David merely walked swiftly down the hall. Neither defendant nor Sara testified that David was

armed, although defendant referred to the guns in Sara's car to speculate that David could have grabbed a weapon before entering the house. However, defendant did not see a gun in David's possession.

¶ 21    The appellate court concluded that the incidents between defendant and David could constitute two separate altercations or a continuing one, a determination it believed was also for the jury to make. *Id.* ¶ 75. Contrary to the appellate court's conclusion, the trial court properly served as a gatekeeper as to whether the jury instruction was needed under the facts. Here, the facts did not warrant the instruction. Regardless of how the incidents are characterized, there was no evidence to support that David was the initial aggressor in the driveway or inside the house. Looking at the altercations as two incidents, it is undisputed that defendant did, in fact, retreat. After David released him on Sara's request, defendant retreated into his house. Because he did retreat, the jury instruction was unnecessary. If the incident inside the house was either a second altercation or a continuation of the first, as discussed above, there was no evidence that David provoked defendant with any aggressive actions before defendant shot him. The duty to retreat instruction was not applicable under any of the circumstances.

¶ 22    In reaching this conclusion, we reject defendant's contention the instruction was necessary to counter the State's line of inquiry that suggested that defendant had a duty to retreat and failed to do so before using force against David. According to defendant, application of IPI Criminal 4th No. 24-25.09X was triggered by the State's argument that defendant could have done more to avoid the danger he perceived. Defendant's contention is unavailing. The State questioned defendant to counter his claim of self-defense and his belief that force was necessary to protect himself. For example, the State asked whether defendant locked the door after he entered the house and whether he considered nonlethal force before firing his weapon. These questions and arguments appropriately challenged defendant's claims of self-defense and the reasonableness of his belief that he needed to defend himself with lethal force. The State emphasized the line of inquiry in its closing argument when it used defendant's failure to secure the door as support that his claim that he believed he needed to defend himself was not credible. Contrary to defendant's contention that the question implied defendant failed to take required actions to avoid the perceived danger, the question explored the reasonableness of his claim of self-defense. The challenged questions and closing argument

statements related to whether defendant had a subjective belief he was in danger. They did not reference any duty defendant had to retreat.

¶ 23    According to the appellate court, without being instructed on the duty to retreat, the jury was without the tools necessary to reach a proper verdict based on the facts. *Id.* However, the only questions before the jury were whether defendant's conduct was justified as self-defense or mitigated to second degree murder based on imperfect self-defense. At his trial, defendant offered both affirmative defenses. See 720 ILCS 5/7-1; 9-2(a)(2) (West 2016). His defense theories focused on his belief that force was necessary to defend himself, and the critical issue for the jury to determine was whether defendant's use of force was reasonable. The State did not argue defendant had a duty to retreat, and defendant did not assert that he did not need to retreat before using force against David. Rather, the jury was asked to determine whether defendant acted in self-defense and/or whether his belief that he needed self-defense was reasonable or unreasonable. Inserting the unsupported theory that defendant had no duty to retreat would only serve to confuse the jury, and the instruction would not have aided the jury in determining defendant's guilt or innocence.

¶ 24    Because there was no evidence presented from which the identity of the initial aggressor could be determined, the trial court did not impermissibly decide a factual issue regarding the identity of the initial aggressor as the appellate court concluded. It did not weigh competing evidence or make factual findings that defendant was the initial aggressor. The trial court merely concluded there was no evidence presented to support that David was the initial aggressor and hence defendant's duty to retreat instruction, as was its role. The record supports the trial court's conclusion, and it cannot be said that no reasonable judge would have agreed with the trial court's decision to deny defendant's request to instruct the jury that he had a duty to retreat.

¶ 25    We find that the trial court's denial of defendant's proffered instruction on his duty to retreat was not an abuse of the court's discretion. A reasonable person could agree with the trial court's decision to deny the jury instruction. Accordingly, we further find the appellate court erred when it found the trial court's denial of the instruction to be error.

¶ 26                                  CONCLUSION

¶ 27         For the foregoing reasons, we affirm the trial court, reverse the appellate court, and remand the cause to the appellate court for it to address the unresolved issues defendant raised on appeal.


¶ 28         Appellate court judgment reversed.

¶ 29         Circuit court judgment affirmed.

¶ 30         Cause remanded.


¶ 31         JUSTICE OVERSTREET took no part in the consideration or decision of this case.