2026 IL App (1st) 232350
No. 1-23-2350
Opinion filed March 27, 2026

FIFTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.16 CR 0807001 |
| JOHN E. ARNOLD, | ) ) | The Honorable Michael Joseph Kane, |
| Defendant-Appellant. | ) ) | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment and
opinion.

**OPINION**

¶ 1     Defendant John E. Arnold, age 67, was found guilty by a jury of the first degree murders of his fellow senior-community residents, David Bosseler and Kruka Ajemba. Bosseler, who was 74 years old, was stabbed 32 times and disemboweled, while Ajemba, who apparently came to Bosseler's aid, was stabbed three times. Rejecting an insanity defense, the jury found defendant guilty but mentally ill, and the trial court sentenced him to natural life in prison, a sentence which was statutorily required due to the death of two victims. 730 ILCS

5/5-8-1(a)(c) (West 2022) ("the court shall sentence the defendant to a term of natural life imprisonment if the defendant, at the time of the commission of the murder, had attained the age of 18, and *** (ii) is found guilty of murdering more than one victim").

¶ 2        On this direct appeal, defendant claims (1) that the trial court erred by refusing to give certain jury instructions and (2) that a natural life sentence is unconstitutional as applied to him because of his mental illness. With respect to the jury instructions, defendant claims that the trial court refused to give (1) a *Lynch* instruction (*People v. Lynch*, 104 Ill. 2d 194, 199-200 (1984)) with respect to victim Bosseler and (2) self-defense and second-degree murder instructions with respect to victim Ajemba, although they were provided with respect to victim Bosseler. *Infra* ¶¶ 31-33 (explanation of a *Lynch* instruction). Regarding the sentencing issue, defendant alleges the court failed to consider his mental illness when, after a hearing, the trial court found, among other things, that "even if the law weren't what the law is, the mitigating circumstances that I've been provided with or that were provided during the course of the trial were not terribly persuasive." For the following reasons, we affirm.

¶ 3                                            BACKGROUND

¶ 4        The evidence at trial established, and no one disputes on appeal, that defendant and the victims were neighbors who lived in a senior community. Defendant lived on the first floor, while Bosseler and Ajemba lived in a two-bedroom apartment on the sixth floor.

¶ 5        Surveillance video showed defendant walking down the sixth-floor hallway with a chair toward Bosseler's apartment a few minutes before 7 a.m. on April 24, 2016, the day of the murders. At 7 a.m., defendant reached the end of the hallway, sat in a chair in front of Bosseler's apartment, and waited. At 7:41 a.m., Bosseler opened his front door, and defendant ran into Bosseler's home. At 7:46 p.m., defendant exited Bosseler's home and walked back to

his own unit. Just a few minutes later, at 7:50 a.m., defendant went back to Bosseler's sixth-floor unit to remove the chair that he had brought earlier.

¶ 6        At trial, there was little issue regarding who the perpetrator was or how the victims had died. Bosseler was found, lying on his bed, disemboweled, with multiple stab wounds. Ajemba was found against the inside of the second bedroom door, holding the door shut, with puncture wounds to her left side. The medical examiner found that Bosseler, who was 68 inches and 260 pounds, had 32 stab wounds, while Ajemba, who was 63 inches and 147 pounds, had 3 stab wounds. The primary issue at trial was defendant's mental state and motive. In a videotaped statement, defendant claimed, among other things, to have acted out of self-defense.

¶ 7        Police recorded two interviews with defendant: the first, on April 25, 2016, lasted approximately three hours; the second, on April 26, lasted approximately eight minutes. During the first interview, defendant changed his account and sometimes gave contradictory answers. In essence, defendant stated that he was friends with Bosseler and that, when defendant's car broke down, defendant gave Bosseler $50 to drive defendant to get his car fixed. Defendant left his identification card (ID) in Bosseler's car, but Bosseler would not give it back. Defendant claimed that Bosseler was moving and was mad that defendant would not buy Bosseler's furniture. Defendant said he called the police, and he claimed that Bosseler would not open the door when the police came. Defendant eventually admitted that he had waited outside of Bosseler's apartment on the morning of the murder. Defendant claimed that Bosseler had hit or assaulted him on prior occasions. Defendant alleged, at one point, that Bosseler had pulled him into the apartment on the day in question and reached for a knife. Defendant stated that he told Bosseler he wanted his ID back, the two argued, Bosseler hit him, and defendant hit back to defend himself. At one point, defendant said he did not see Ajemba in the apartment,

and at another point, he said he hit her with a screwdriver when she tried to help Bosseler. At one point, he admitted stabbing Bosseler.

¶ 8          During the first interview, defendant admitted, among other things, to having thrown out his shoes because they had blood on them. Police testified that, from a nearby dumpster, they retrieved a bag containing a pair of gym shoes with blood that was later tested and matched Bosseler's DNA. A jacket with blood was retrieved from defendant's apartment and also matched Bosseler's DNA. A detective testified to retrieving defendant's ID from Bosseler's car.

¶ 9          During the second interview, defendant claimed, among other things, that he killed Bosseler by accident. Defendant went up there to scare Bosseler. Bosseler called defendant an asshole and reached for a knife; defendant also had a knife, which he had brought from his own home. When Ajemba tried to help Bosseler and attacked defendant, defendant stabbed her to get her off of himself.

¶ 10          A detective testified that, prior to the second videotaped interview, defendant told the detective that he killed Bosseler, that he could not believe that he had killed anyone, and that he killed Ajemba because she was defending Bosseler.

¶ 11          The defense called two witnesses: Dawn Joyce, who had met defendant at church, and Dr. Erick Neu, a forensic psychologist who had examined defendant before trial and found him sane at the time of the offense. Joyce testified that she had met defendant in 2012 or 2013 and that defendant regularly attended church until April 2016. However, in early 2016, she noticed that his behavior changed, that he was not thinking clearly, and that he was slipping. In her opinion, he was not capable of making decisions or distinguishing right from wrong.

¶ 12    Dr. Neu testified. that based on his examination of defendant's medical records, his evaluation of defendant, and an interview with defendant's nephew, his "primary diagnosis" was schizophrenia, which was acutely symptomatic at the time of the murders. His "secondary diagnosis" was "substance abuse" involving heroin, cocaine, and cannabis. Dr. Neu found that defendant's drug use greatly exacerbated his symptoms. As to defendant's sanity, Dr. Neu found him legally sane at the time of the offense. While defendant's symptoms impaired his judgment, defendant knew right from wrong.

¶ 13    After listening to closing arguments and jury instruction, the jury found defendant guilty but mentally ill of the two murders. Defendant filed a motion to declare unconstitutional as applied to him the statutory section that required the imposition of natural life due to the murder of two victims. After the State's written memo and a hearing on this issue, the trial court denied defendant's motion, stating:

> "There is no case specifically on point with regards to a finding of guilty but mentally ill, but there is *People v. Robinson* [2021 IL App (1st) 192289], which came out of the 1st District in May of 2021 before we tried this case which is almost on point because of the nature of the trial where the lawyers submitted to the court as much material with regards to the defendant's mental health as this court has heard. Now I've been through a number of records that I had before trial and those confirm that Mr. Arnold did have a psychiatric issue which I heard about during the course of the trial.
>
> In *Robinson*, the case had been remanded for resentencing. And in that case, the counsel argued that the sentencing statute requiring a natural life sentence was unconstitutional as applied to the defendant under the proportion of penalties clause of the Illinois Constitution. However, Justice Burke referenced the fact that the Illinois

Supreme Court had dealt with this issue while the case was pending and Justice Burke went into great detail to explain why that sentencing provision is constitutional. And in the Supreme Court case [*People v.*] *Coty*, [2020 IL 123972,] the court found that the mandatory life sentence imposed on the intellectually disabled defendant did not violate the proportionate penalties clause as applied to him. The Legislature had the power to prescribe penalties for defined offenses, and the power necessarily includes the authority to prescribe mandatory sentences, even if such sentences restricted the judiciary's discretion with regards to sentences. In that case, the court acknowledged that the record, as in this case, demonstrated a long-term struggle with behavioral problems, complying with rules, et cetera.

And so, while there was no finding of guilty but mentally ill in that case, in mitigation there were numerous documents and medical records submitted to the sentencing judge and the [reviewing court] found that in spite of that evidence that the sentencing provision was constitutional.

And for that reason, this court agrees with *Robinson* and *Coty* and finds that the argument is misplaced under these circumstances, and the statutory provision is constitutional."

¶ 14    At the sentencing hearing, the trial court heard evidence in aggravation and mitigation, including that defendant had no prior felony convictions. After listening to evidence, the defendant's remarks and argument, the trial court found: "It does appear to me that this crime, at least as to the gentleman, was premeditated." The trial court further found:

"[E]ven if the law weren't what the law is, the mitigating circumstances that I've been provided or that were provided during the course of the trial were not terribly

persuasive. I mean, there was no evidence to suggest he was insane at the time of the crime. There was an opinion that he had some mental issues. But, you know, half the county jail is populated by people who have some kind of mental issues. I mean, the actions in this case defy explanation with regards to a motive as far as I'm concerned. And these two people died for no reason. I mean, no reason whatsoever."

The trial court then imposed the statutorily required sentence of natural life. Defense counsel immediately made a motion to reconsider sentence, which, as the trial court described, was "two paragraphs with regards to the constitutionality of the imprisonment under the sentencing statute." Neither party wanted argument on the motion, and the trial court denied it. This appeal followed.

¶ 15                                   ANALYSIS

¶ 16                              I. Jury Instructions

¶ 17        On this appeal, defendant argues that the trial court erred in refusing to provide three requested instructions, namely, self-defense and second degree murder instructions regarding Ajemba, and a *Lynch* instruction regarding Bosseler's allegedly violent prior behavior toward defendant.

¶ 18                            A. Standard of Review

¶ 19        In defendant's opening brief, he argued that the question of whether a defendant had presented sufficient evidence to justify giving a particular instruction was a question of law, which this court should review *de novo*. In support, he cited the Illinois Supreme Court cases of *People v. Washington*, 2012 IL 110283, ¶ 19, and *People v. Everette*, 141 Ill. 2d 147, 157 (1990). In response, the State argued that, in the subsequent case of *People v. McDonald*, 2016 IL 118882, ¶¶ 27-30, 39-41, the supreme court had analyzed both *Washington* and *Everette* in

depth and found that these cases had not, in fact, applied *de novo* review to this issue. The *McDonald* court found that a litigant who cited these cases as supporting *de novo* review had misread them. *McDonald*, 2016 IL 118882, ¶ 42

¶ 20 The *McDonald* court concluded: "when the trial court, after reviewing all the evidence, determines that there is insufficient evidence to justify the giving of a jury instruction, the proper standard of review of that decision is abuse of discretion." *McDonald*, 2016 IL 118882, ¶ 42. Similarly, in the more recent case of *People v. Sloan*, 2024 IL 129676, ¶ 15, the supreme court cited *McDonald* with approval and held: "We review a trial court's decision denying a jury instruction request for an abuse of discretion." Thus, the abuse-of-discretion standard of review is firmly established in our supreme court's precedent.[1]

¶ 21 When determining whether a defendant is entitled to a jury instruction that would lessen the offense, the trial court must consider whether there is "some evidence" in the record that, if believed by the jury, would reduce the crime charged. *People v. Eubanks*, 2019 IL 123525, ¶ 72; *McDonald*, 2016 IL 118882, ¶ 25; see *Sloan*, 2024 IL 129676, ¶ 15. When applying this familiar "some evidence" standard, the trial court should not weigh the evidence or judge its credibility. *Sloan*, 2024 IL 129676, ¶ 15; *Eubanks*, 2019 IL 123525, ¶ 72; *McDonald*, 2016 IL 118882, ¶ 25.

¶ 22 When a trial court determines that there was insufficient evidence to justify the giving of an instruction, our standard of review, as noted above, is abuse of discretion. *Sloan*, 2024

---

[1]In his reply brief, defendant acknowledged that, while the decision of whether to give a particular instruction is left to the discretion of the trial judge, the issue of whether an instruction conveyed the applicable law is subject to *de novo* review. However, on this appeal, defendant does not call upon us to determine the correctness of an instruction, but rather asks us to find that the trial court erred by refusing to provide certain instructions. Thus, the parties now appear to be in agreement that our standard of review is abuse of discretion, and our reading of recent supreme court cases confirms that they are correct. *E.g.*, *Sloan*, 2024 IL 129676, ¶ 15

IL 129676, ¶ 15; *Eubanks*, 2019 IL 123525, ¶ 72; *McDonald*, 2016 IL 118882, ¶ 42. An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful or so unreasonable that no reasonable person would agree with it. *Sloan*, 2024 IL 129676, ¶ 15. The question is not whether we would have made the same decision in the first instance, but whether the trial court's decision was unreasonable. *McDonald*, 2016 IL 118882, ¶ 32.

¶ 23                          B. Second Degree Murder and Self-Defense Instructions

¶ 24         Defendant argues that his recorded statements supported giving second-degree murder and self-defense instructions regarding Ajemba. In rejecting this request, the trial court found "there is nothing on this woman, nothing."

¶ 25         To obtain a jury instruction on self-defense, a defendant must establish some evidence of six factors: (1) force was threatened against the defendant, (2) the defendant was not the aggressor, (3) the danger of harm was imminent, (4) the threatened force was unlawful, (5) the defendant actually and subjectively believed a danger existed that required the use of the force applied, and (6) the defendant's beliefs were objectively reasonable. *People v. Jones*, 2025 IL App (1st) 230771, ¶ 89 (citing *Washington*, 2012 IL 110283, ¶ 35). If the State negates any one of the self-defense elements, the defendant's claim of self-defense fails. *Jones*, 2025 IL App (1st) 230771, ¶ 89 (citing *People v. Jeffries*, 164 Ill. 2d 104, 128 (1995)).

¶ 26         Second-degree murder is distinguishable from self-defense only in terms of the sixth factor, namely, the nature of defendant's belief at the time of the killing. *People v. Rodriguez*, 336 Ill. App. 3d 1, 17 (2002). After the State has first proved first degree murder, a defendant who claims this form of second-degree murder must show the first five factors of the affirmative defense of self-defense (listed above) by a preponderance of the evidence. *People v. Castellano*, 2015 IL App (1st) 133874, ¶ 149.

¶ 27    If the evidence supports giving a self-defense instruction, the trial court must give an instruction on second degree murder as a mandatory counterpart. *McDonald*, 2016 IL 118882, ¶ 27. This is because, the sixth factor, "[t]he question of whether the defendant's subjective belief" in the need for force "was reasonable or unreasonable is for the jury to decide." *McDonald*, 2016 IL 118882, ¶ 28.

¶ 28    The fourth factor asks whether the threatened force was unlawful. With respect to the fourth factor, defendant cites in support section 7-1(a) of the Criminal Code of 2012 (Code), which provides in full:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." 720 ILCS 5/7-1(a) (West 2022).

Applying the words of the above-quoted statute to the facts of this case, Ajemba would have been "justified in the use of force which is intended or likely to cause death or great bodily harm" if she "reasonably believe[d] that such force [was] necessary to prevent imminent death or great bodily harm to [herself] or another." 720 ILCS 5/7-1(a) (West 2022). Thus, even if the force she used had been deadly, her use of force would have been lawful, as an attempt to prevent Bosseler's imminent death. Since defendant failed to present some evidence that her use of force was unlawful, he was not entitled to either a second-degree murder or self-defense instruction. We certainly cannot find on this record that the trial court abused its discretion in

concluding that defendant failed to present some evidence that Ajemba's use of force was unlawful. Thus, the trial court's refusal to give both a second-degree murder instruction and a self-defense instruction regarding Ajemba was not arbitrary, fanciful, or unreasonable, and as such, is not grounds for reversal.

¶ 29     Defendant's primary argument is that, since the trial court gave these instructions with respect to the first victim, it should have also given them with respect to the second victim. However, just because a trial court chose, as was its discretion, to provide an instruction regarding one charge or victim does not mean that the same instruction is then required for another victim or charge, upon pain of reversal. As a result, we do not find this argument persuasive, and we find no reason to reverse on this basis.

¶ 30                                C. *Lynch* Instruction

¶ 31     On appeal, defendant argues that the trial court refused to give a requested *Lynch* instruction.

¶ 32     In *Lynch*, 104 Ill. 2d at 199-200, our supreme court held that evidence of a victim's aggressive and violent character could be used, in two situations, to support a defendant's theory of self-defense. These two specified situations are, first, to demonstrate that defendant's knowledge of the victim's violent tendencies affected the defendant's perception of and reaction to the victim's behavior, and second, to support a defendant's version of the facts where there were conflicting accounts of what happened. *People v. Simon*, 2011 IL App (1st) 091197, ¶ 70 (discussing *Lynch*, 104 Ill. 2d at 199-200).

¶ 33     However, both these situations still require "reasonably reliable evidence of a violent character," such as, for example, multiple convictions for battery. *Lynch*, 104 Ill. 2d at 201; *People v. Ciavirelli*, 262 Ill. App. 3d 966, 971 (1994) (pursuant to *Lynch*, "the evidence must

be reliable"). While a prior altercation or arrest, without a conviction, may reflect a violent character, *Lynch* and its progeny require proof that the victim actually committed the alleged violent acts. *People v. Figueroa*, 381 Ill. App. 3d 828, 846 (2008); *People v. Cook*, 352 Ill. App. 3d 108, 128 (2004) (although *Lynch* does not require a conviction, there still must be proof that the victim performed the alleged acts). Also, a trial court does not abuse its discretion in denying such evidence if it "would create a series of 'mini-trials' on those incidents whose relevancy would be, at best, tenuous and tangential, diverting the jurors' attention away from the events in the present case." *Ciavirelli*, 262 Ill. App. 2d at 973.

¶ 34    Illinois Pattern Jury Instructions, Criminal, No. 3.12X (approved Oct. 17, 2014) (hereinafter IPI Criminal No. 3.12X), which is based on *Lynch*, provides in full:

"In this case, the State must prove beyond a reasonable doubt the proposition that the defendant was not justified in using the force which he used. You have [(heard testimony) (received evidence)] of ___'s [(prior conviction of a violent crime) (prior acts of violence) (reputation for violence)]. It is for you to determine whether ___ [(was convicted) (committed those acts) (had this reputation)]. If you determine that ___ [(was convicted) (committed those acts) (had this reputation)] you may consider that evidence in deciding whether the State has proved beyond a reasonable doubt that the defendant was not justified in using the force which he used."

¶ 35    At trial, defendant sought a *Lynch* instruction based on his own recorded statement that Bosseler hit him a few days prior to the murder.[2] On appeal, defendant also notes that he had

---

[2]At the jury instruction conference, defense counsel argued that "there is evidence that—there is evidence that he said that Bosseler had hit him previously a week before, beaten him up, so that would be a prior act of violence." Counsel did not bring up any other acts or statements when asking for the *Lynch* instruction.

further alleged in his recorded statement that Bosseler had hit him on other occasions. The committee note to the instruction cites *Lynch* and states: "Give this instruction only when evidence of the victim's prior conviction for a crime of violence has been admitted pursuant to [*Lynch*]." (Emphasis omitted.) IPI Criminal No. 3.12X, Committee Note. In the case at bar, the trial court denied the requested instruction on the basis that there was no prior conviction.

¶ 36        On appeal, the State acknowledges this was an incorrect basis for the denial. The State's brief concedes: "defendant is correct that a prior altercation or arrest, without a conviction, can be adequate proof of violent character." Despite the committee note, the instruction itself permits evidence of not only convictions but also acts of violence. In addition, Illinois Rule of Evidence 405(b)(2) (eff. Jan. 1, 2011) provides: "In criminal homicide or battery cases when the accused raises the theory of self-defense and there is conflicting evidence as to whether the alleged victim was the aggressor, proof may also be made of specific instances of the alleged victim's prior violent conduct."

¶ 37        However, this court may affirm on any basis found in the record, whether or not the trial court relied on that basis or whether the trial court's reasoning was correct. *People v. Williams*, 2019 IL App (3d) 160132, ¶ 15; *People v. Begay*, 2018 IL App (1st) 150446, ¶ 35. In the case at bar, defendant's terse assertions that he was hit or assaulted by Bosseler provide no context or detail, such as when, where, or how, from which a trial court or a reviewing court could assess their reliability. Thus, we can find no abuse of discretion here in denying a *Lynch* instruction.

¶ 38                                    II. Sentencing

¶ 39        Defendant argues that his statutorily required sentence of natural life for murdering two victims violates our state's proportionate penalties clause as applied to him, due to his mental

illness. Section 5-8-1(a)(c) of the Unified Code of Corrections (Code) provides that "the court shall sentence the defendant to a term of natural life imprisonment if the defendant, at the time of the commission of the murder, had attained the age of 18, and *** (ii) is found guilty of murdering more than one victim." 730 ILCS 5/5-8-1(a)(c)(ii) (West 2022).

¶ 40    Statutes are presumed constitutional, and the party challenging the statute has the burden of clearly establishing the alleged invalidity. *People v. Coty*, 2020 IL 123972, ¶ 22. In addition, a court must construe the statute so as to uphold its constitutionality, if reasonably possible. *Coty*, 2020 IL 123972, ¶ 22. Constitutionality of a statute is a question of law that we review *de novo*. *Coty*, 2020 IL 123972, ¶ 22. *De novo* review means that we perform the same analysis that a circuit court would and that we owe no deference to the trial court's decision. *People v. Avdic*, 2023 IL App (1st) 210848, ¶ 25.

¶ 41    The proportionate penalties clause in our state constitution provides: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. However, our supreme court has "repeatedly recognized that the legislature has the power to prescribe penalties for defined offenses, and that power necessarily includes the authority to prescribe mandatory sentences, even if such sentences restrict the judiciary's discretion in imposing sentences." *Coty*, 2020 IL 123972, ¶ 24. Our supreme court has affirmed in other cases the application of statutorily mandated natural life sentences. *Coty*, 2020 IL 123972, ¶ 31 (discussing a prior case).

¶ 42    In *Coty*, 2020 IL 123972, ¶ 46, our supreme court found that a mandatory natural life sentence imposed upon an intellectually disabled adult was constitutional as applied to him. The court made this finding under both the proportionate penalties clause of our constitution

and the eighth amendment of the United States Constitution (U.S. Const., amend. VIII). *Coty*, 2020 IL 123972, ¶¶ 44-45. In reaching this finding, the court considered three factors: (1) culpability, (2) future dangerousness, and (3) rehabilitative potential. *Coty*, 2020 IL 123972, ¶ 32; *People v. Clark*, 2023 IL 127273, ¶ 74 ("[i]n *Coty*, we identified three important considerations in a proportionate penalties clause analysis"). Although the trial court here did not use these terms, it made findings with respect to all three factors. With respect to culpability, the trial court found no motive or excuse, in that the refusal or failure of the victim to return defendant's identification card was so completely out of proportion to the crime committed. With respect to future dangerousness, the trial court noted that the crime was premeditated. The video established that defendant waited patiently for almost an hour outside the victim's door. With respect to rehabilitative potential, the trial court found that, although defendant certainly had mental issues, he was sane at the time of the offense. As noted above, Dr. Neu found him legally sane at the time of the offense. Thus, it was a sane man who committed this particularly repulsive offense, where one of the victims was disemboweled on his own bed. Although we exercise *de novo* review, we can find no error here requiring reversal. *Clark*, 2023 IL 127273, ¶ 79 (diminished impulse control resulting from a mental deficiency may render a defendant a threat to the community, thereby requiring a greater prison sentence to protect the public).

¶ 43    On appeal, defendant argues, first, that his life-long struggle with mental illness demonstrates a diminished culpability and, second, that unlike the intellectual disabilities present in *Coty*, defendant has a greater capacity for rehabilitation since defendant's conditions are treatable. Defendant argues that his behavior can and does improve with medication. The State notes that the expert witness testified that defendant's mental health issues were "greatly

exacerbate[d]" by defendant's well-documented substance abuse, which included cocaine and heroin. See *People v. Aquisto*, 2022 IL App (4th) 200081, ¶ 100 (an "intractable" drug addiction may be considered an aggravating factor at sentencing).

¶ 44     Unfortunately for defendant, his first point undercuts his second point. *Coty*, 2023 IL 127273, ¶ 77 (a life-long disability is a two-edged sword, in that it may diminish culpability while increasing the probability of future dangerousness). Although he argues his conditions are treatable, he concedes they have been a life-long issue, thereby minimizing the likelihood of rehabilitation. In his brief, defendant notes that one of his childhood friends told the presentence investigator that, when defendant was on his prescribed psychiatric medications, defendant was "one of the best dudes ever." However, in the next line, the same friend stated that, when defendant was off his medications, he was a "terror." In addition, defendant's drug abuse further reduced the likely success of rehabilitation. Given his age, his life-long conditions appear to be "permanent fixtures of his character." *Clark*, 2023 IL 127273, ¶ 97; *Coty*, 2020 IL 123972, ¶ 42 ("his age make[s] him less likely to be rehabilitated"). Thus, we do not find persuasive defendant's arguments that his mental health issues made his sentence disproportionate as applied to him.

¶ 45                              CONCLUSION

¶ 46     For the foregoing reasons, we find no error in the trial court's refusal to provide certain requested instructions or in the trial court's imposition of a statutorily required sentence.

¶ 47     Affirmed.

*People v. Arnold*, 2026 IL App (1st) 232350

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CR-0807001; the Hon. Michael Joseph Kane, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Arianne Stein, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Brian A. Levitsky, and Lisanne P. Pugliese, Assistant State's Attorneys, of counsel), for the People. |