2026 IL App (1st) 241363-U
No. 1-24-1363

FIFTH DIVISION
May 8, 2026

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 19 CR 05655 |
| | ) | |
| JUDAH HERBERT, | ) | The Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Presiding Justice Mitchell and Justice Wilson concurred in the judgment.

**ORDER**

¶ 1        Held: The trial court did not abuse its discretion in providing the "initial aggressor" jury instruction over defendant's objection, where the defense argued both self defense and defense of others  and conceded that the issue was "obviously a factual dispute" at trial.

¶ 2        Defendant Judah Herbert was convicted after a jury trial of first degree murder and sentenced to 32 years with the Illinois Department of Corrections (IDOC). On this direct appeal, defendant raises two claims:  (1) that the trial court abused its discretion by providing

the "initial aggressor" jury instruction over defendant's objection; and (2) that the State violated his right to a fair trial by allegedly insinuating through questioning and closing argument a fact that the prosecutor allegedly knew to be false. For the following reasons, we do not find these arguments persuasive and affirm.

¶ 3                                    BACKGROUND

¶ 4        Defendant does not challenge the sufficiency of the evidence against him. The "Statement of Facts" in his appellate brief begins: "[Defendant] was 17 years old when he shot and killed Daniel Carter in defense of Clifford Wells." At defendant's jury trial, his defense was that he acted both in self-defense and in defense of others, in particular, Clifford Wells. The State's evidence established, and defendant testified at trial, that he walked up behind the victim and shot the victim at very close range. The victim died from five gunshot wounds to his neck, chest, abdomen and thigh.

¶ 5        The testimony at trial, including defendant's testimony, established that family and friends had gathered for a birthday party, that the victim and Wells were fighting, that defendant joined the fight on Wells's behalf, that defendant left at some point to go to Wells' car to retrieve a gun, and that defendant returned with the gun. Defendant testified that, when he returned with the gun, the victim was following behind Wells with a gun, and defendant thought the victim was going to shoot Wells, and so defendant shot the victim. Defendant testified that his intent was "to protect me, myself and others." The State presented two event witnesses. One of the event witnesses, Towanda Wells, testified that there was nothing in the victim's hands at the time of the shooting, that the victim was standing and talking as he was getting ready to leave, and that defendant walked up to the victim and shot him multiple times. Similarly, the other eyewitness, Desjambre Carr, testified that she was standing next to, and

talking to the victim, as he was getting ready to leave, and that the victim had nothing in his hands when defendant walked up from behind and shot the victim.

¶ 6        Towanda Wells testified that, earlier at the party, the victim was upset because he had placed a gun in Carr's purse, and he discovered it was missing and accused Wells of taking it. The victim left, and there was talk at the party that, when he returned, he was going to return with a gun. Similarly, Carr testified that the victim accused Wells of stealing his gun, which led to them fighting, and that the victim left the party and then returned. Both Wells and Carr testified that, when the victim and Wells were fighting earlier at the party, defendant jumped into the fight on Wells' behalf, turning that fight into a two-on-one brawl.

¶ 7        At the jury instruction conference, the State offered the "initial aggressor" instruction:

"A person who initially provokes the use of force against himself is justified in the use of force only if the force used against him is so great that he reasonably believes he is in imminent danger of death or great bodily harm, and he has exhausted every reasonable means to escape the danger other than the use of force which is likely to cause death or great bodily harm to the other person."

¶ 8        Defense counsel objected. stating:

DEFENSE COUNSEL: "We don't believe that our client, [defendant] was the initial aggressor in this case. That is obviously a factual dispute. We believe based on the evidence that came forth during the course of the trial that our position is supported. We would object to this instruction being given."

In response to that argument, the trial court ruled:

THE COURT: " There is testimony indicating that the victim in this case was not the initial aggressor either. It is a factual dispute, and it is proper law to instruct the

3

jury based on their findings of fact to apply this law in the appropriate fashion. Over the defendant's objection, People's 18 will be given."

¶ 9    The defense requested and received the following jury instruction regarding self-defense and defense of others:

"A person is justified in the use of force when and to the extent that he is reasonably believes that such conduct is necessary to defend himself or another against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another."

¶ 10    In closing argument, the defense's first sentence was that defendant acted to protect himself and others. Counsel quoted defendant's testimony that defendant's intent was to protect "me, myself and others." Counsel argued that defendant shot the deceased because he was posing a threat "to himself and everybody else."

¶ 11    Defense counsel argued that defendant was "justified in shooting [the victim] because [the victim] was the initial aggressor on that night. [The victim] was the initial aggressor." Defense counsel argued that the victim was "the initial aggressor" because the victim was fighting about a missing gun, and he left and came back with a gun.

¶ 12    After listening to the evidence, instructions, and argument, the jury found defendant guilty of first-degree murder. Defendant filed a motion for a new trial and an amended motion that alleged, among other things, that the trial court "erred in granting" the State's request for the "initial aggressor" instruction. The defense did not elaborate in its motion or at the hearing on this point, and the motion was denied on May 20, 2024. At the sentencing on June 4, 2024,

the trial court stated that, in light of defendant's "youthfulness and the stated objective of the legislature [of] restoring [defendant] to useful citizenship," the court was exercising its discretion to not impose a firearm enhancement. The court then sentenced defendant to 32 years with IDOC. On June 4, 2024, defendant filed a motion to reconsider sentence which was denied. No issues are raised on appeal with respect to sentence.

¶ 13    On June 24, 2024, defendant filed a timely notice of appeal, but with the wrong judgment date. On February 26, 2025, the supreme court issued a supervisory order granting defendant's motion to allow him to amend the notice of appeal to state the date of judgment as June 4, 2024. This timely appeal then followed.

¶ 14                                    ANALYSIS

¶ 15                                I, Jury Instruction

¶ 16    Defendant argues that the trial court abused its discretion in providing the "initial aggressor" instruction, because (1) "no evidence showed that [defendant] or Wells provoked the force against Wells that [defendant] acted to thwart by shooting [the victim}" and (2) the instruction applies only to self-defense and not to defense of others. For the following reasons, we do not find these arguments persuasive.

¶ 17    The decision of whether to give a particular jury instruction generally rests within the sound discretion of the trial court. *People v. Miller*, 2021 IL App (1st) 190060, ¶ 44 (citing *People v. Lovejoy*, 235 Ill. 2d 97, 150 (2009)). Both the State and the defense are entitled to jury instructions regarding their theories of the case. *People v. Brown*, 406 Ill. App. 3d 1068, 1079 (2011). "An initial-aggressor instruction is warranted when either the State presents evidence that defendant was the aggressor or the case involves a question of whether defendant was the aggressor." *Brown*, 406 Ill. App. 3d at 1079. Generally, "[t]endering the self-defense

instruction, along with the initial-aggressor instruction, allows the jury to resolve conflicts in evidence and apply the appropriate law." *Brown*, 406 Ill. App. 3d at 1079.

¶ 18    A requested instruction should be given if there is some evidence to support it. *People v. Sloan*, 2024 IL 129676, ¶ 15; *People v. Izquierdo-Flores*, 332 Ill. App. 3d 632, 638 (2002) ("an instruction is warranted if there is even slight evidence to support it"). When determining if there is some supporting evidence, the trial court should not weigh the evidence. *Sloan*, 2024 IL 129676, ¶ 15. On appeal, we review the trial court's decision only for an abuse of discretion. *Sloan*, 2024 IL 129676, ¶ 15. An abuse of discretion occurs when the trial court's decision is arbitrary, fanciful or unreasonable to a degree that no reasonable person would agree with it. *Sloan*, 2024 IL 129676, ¶ 15.

¶ 19    At trial, defendant did not argue that the proposed instruction was confusing or that the State failed to show some evidence to support giving it. Instead, the defense argued that there was some evidence to support defendant's position that he was not the initial aggressor. However, the defense also conceded that whether defendant was, or was not, the initial aggressor was "obviously a factual dispute." Based on this argument, we cannot find that the trial court's decision to admit the instruction was arbitrary or fanciful. *People v. Hayes*, 319 Ill. App. 3d 810, 818-19 (2001) ("It is well settled that an objection on specific grounds forfeits assignment of error on other grounds not specified"); *People v. Steidl*, 142 Ill. 2d 204, 230 (1991) ("Having specified a ground for his objections at trial, defendant has waived on appeal any alternative objections not specified."). See also *People v. Denson*, 2014 IL 116231, ¶ 13 ("forfeiture rules exist to encourage defendants to raise issues in the trial court, thereby ensuring *** that the trial court has an opportunity to correct any error prior appeal").

¶ 20     Defendant's first argument, that "no evidence showed that [defendant] or Wells provoked the force against Wells that [defendant] acted to thwart by shooting [the deceased}" is not supported by the record. The jury could have found that Wells provoked force when Wells took the victim's gun as the victim alleged, or that defendant provoked force when he jumped into the earlier fight, turning it into a lopsided two-on-one brawl.

¶ 21     Defendant's second argument is that the instruction was not appropriate where the alleged defense was defense of others, rather than self-defense. First, as the State notes, this argument was never made before the trial court and so is forfeited. Second, as the State also notes, defendant repeatedly argued *both* self-defense and defense of others in both his testimony and closing argument. Third, at defendant's request, the jury was instructed about *both* defenses. Since self-defense was also alleged in testimony, argument, and instruction, defendant's argument that the instruction was not appropriate for defense of others, does not negate the relevancy and appropriateness of the instruction as it related to self-defense.

¶ 22     For all these reasons, we do not find defendant's arguments persuasive on this issue.

¶ 23                                     II. State's Argument

¶ 24     Second, defendant argues that the State violated his right to a fair trial by allegedly insinuating through questioning and closing argument a fact that the prosecutor allegedly knew to be false. Defendant argues that, through the State's questioning of Towanda Wells and its argument to the jury about an "alleged" gunshot wound, the State implied to the jury that Clifford Wells had *not* been shot, when defendant claimed that Wells had been shot. Although the State did allege in pretrial bond-related proffers that Wells had been shot, and defendant testified to that effect at trial, the State's evidence at trial, to the contrary, supported its

7

contention at closing argument that Wells had not been shot. Thus, the record fails to demonstrate the intentional falsity that defendant claims.

¶ 25     Defendant acknowledges that he failed to raise the claim at trial or in a posttrial motion, thereby forfeiting review. This case amply demonstrates why issues should be raised first in the court below, particularly so that the trial court can make findings of fact that we, on review, cannot make. Defendant's claim here turns on an alleged falsity, but this record fails to offer the proof of it that defendant's claim demands.

¶ 26     The record before us shows that defendant was arrested on March 27, 2019, and indicted on April 30, 2019. On August 12, 2020, defendant moved for release on bond. His counsel stated that he had been "held no bail" since March 2019.[1] The State offered a proffer of what it expected the evidence at trial to show. In this proffer, the State alleged, among other things, that the victim and Wells were fighting, that defendant joined the fight to assist Wells and to beat up the victim, and that, during this struggle, "a single gunshot went off striking [Wells] in the head." On appeal, the State acknowledges that "head" is a typo and that the word should be "hand." At the end of the hearing, the court decided not to disturb the prior "no bail" finding. At subsequent status dates, it was clear that discovery was continuing.

¶ 27     On January 13, 2022, the court acknowledged that it had received material subpoenaed by the Public Defender's Officer, namely, "medical records for Clifford Wells" and stated that it would conduct an in-camera inspection of them. On February 17, 2023, defense counsel reminded the court that it was supposed to review Wells's medical records. When the court

---

[1] In court for the arraignment on May 8, 2019, the trial court advised defendant that he needed to show up for future court dates, thereby suggesting that defendant was out on bail. However, on July 10, 2019, counsel asked for, and received, an order permitting counsel to watch videos in jail with defendant. On January 9, 2020, and February 27, 2020, counsel stated that defendant was in custody.

asked what it should be looking for, defense counsel responded that "both the State and I were looking to verify if there was any injury that this person was treated for." The court stated that it would look for that, and if there was anything relevant, the court would make copies of it. However, the court did not state in a subsequent order or proceeding what it found or copied, if anything.

¶ 28        On November 13, 2023, the court held a detention hearing regarding defendant's motion, filed on October 24, 2023, for release under the new pretrial release law and the State's responding petition to detain. With regard to the proffer, the State repeated the same litany of facts as the proffer before, including that "[a] single gunshot went off" striking Wells in the hand. However, the State also said that it had not yet met with one of the witnesses to the struggle, who was later identified as Towanda Wells. The court denied defendant's motion for release.

¶ 29        Almost two months later, on January 8, 2024, trial began with jury selection. The following day, during opening statements, the State acknowledged that, during the fight among Wells, the victim and defendant, "a sound ** goes off" that sounds like a gunshot, but the State did not mention a shot striking Wells's hand. However, the defense argued that there was a gunshot and that it hit Wells.

¶ 30        Towanda Wells testified that, although she heard a gunshot during the fight among Wells, the victim and defendant, she did not see a gun or a muzzle flash, and she did not see Wells get shot. Towanda testified that she called 911 twice. The first time, she called 911 because she believed that Wells had been shot. However, during her second call to 911, she clarified that Wells had not been shot.

¶ 31　　　　　Based on this record, we are unable to make a factual finding that the State knowingly made a false statement. A proffer is not considered evidence, but rather is a statement about what the evidence and testimony are expected to show. *People v. Morgan*, 2024 IL App (4th) 240103, ¶ 15; *People v. Weinke*, 2016 IL App (1st) 141196, ¶ 41 (a proffer summarizes "what the expected testimony will be"). A proffer cannot be weighed in the same way as witness testimony or documentary evidence. *Morgan*, 2024 IL App (4th) 240103, ¶ 15. In the case at bar, the record does not demonstrate a knowing falsity. What the record does show is that the evidence at trial did not line up exactly with what was expected prior to trial, which often occurs. Thus, defendant's argument, which is based on the premise of a knowing falsity, is not persuasive.

¶ 32　　　　　In his reply brief, defendant argues that, after trial, his counsel told the court that she had spoken to hospital personnel who treated Wells "for that gunshot wound." First, her statement, which itself is hearsay, does not reflect what the State did, or did not, know at trial. Second, the words quoted by defendant have been pulled out of context. After trial, defendant filed a *pro se* motion alleging ineffective assistance of counsel for several reasons, including for failing to call Wells, who showed up mid-trial outside the courtroom. In response to defendant's *pro se* motion, defense counsel told the court that she decided not to call Wells as a witness because Wells's testimony "would conflict with what [defendant] told us happened, and it did not corroborate [defendant] enough to make him important." Counsel explained that, "based on our conversation with Mr. Wells and the amount that we were already equipped with in terms of inconsistent statements he made to the police, to the hospital personnel who he was treated for that gunshot wound, as well as other factors," their opinion was that Wells would not be helpful. Put in context, her words are *not* a representation, as defendant's appellate brief

asserts, that his counsel had spoken to hospital personnel and that they had said that they had treated Wells "for that gunshot wound." Thus, this quote, by someone else other than the State and pulled out of context, has little impact on our analysis.

¶ 33                                     CONCLUSION

¶ 34        For the foregoing reasons, we do not find persuasive the two claims that defendant raised on appeal and, thus, must affirm.

¶ 35        Affirmed.